**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

| | |
|---|---|
| **CASSIDY WILLIAMSON** | **PLAINTIFF** |
| **V.** | **CAUSE NUMBER: 4:25-cv-00103-JDM-DAS** |
| **CITY OF GRENADA, MISSISSIPPI** | **DEFENDANT** |

# MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

Cassidy Williamson (white) is a Sergeant in the Grenada Police Department. For years, Williamson worked patrol. But when the Department needed administrative help to reach national certification standards, Williamson stepped up. He spent three years working on the Department's tedious administrative paperwork. While doing so, he remained a patrol sergeant. Eventually, his administrative work led to the Department becoming nationally certified.

Because Williamson was then performing mostly detailed administrative certification work, he sought a promotion to Commander. But the Department's Police Chief, George Douglas (black), denied the fourteen-year Department veteran Williamson his desired promotion. Yet that same month the Chief rocketed a newly-hired black officer up the promotional ladder. In doing so, the Chief disregarded the Department's promotion rules. And he let that officer skip several ranks and rise immediately to Captain. The Chief crafted this high-ranking job for the probationary patrol officer, though he had worked for the Department just a few months.

Williamson believed race motivated the new black officer's promotion. So he filed a grievance claiming race discrimination in the Department's promotion process. Other officers filed similar grievances.

During this time, the Department was short-staffed on patrol officers. While Williamson was mostly performing administrative paperwork, the Chief told Williamson he needed him to work more patrol shifts. But returning to patrol stressed Williamson. So he took medical leave for anxiety and other underlying conditions.

After some weeks off, Williamson asked to return in a purely administrative role. But the City refused his request. It pointed out Williamson was still a patrol sergeant. And it needed him on patrol.

Upset about not being promoted and having to work patrol, Williamson sued the City of Grenada. He alleged race discrimination for the Police Chief not promoting him. And he claims retaliation for the Chief making him work patrol shifts. He also brought a disability discrimination claim. He bases the disability claim on the City not accommodating his return to work with a purely administrative role. The City moved for summary judgment on Williamson's claims. [65]

After review, the Court finds the Police Chief's highly suspect promotion of the newly-hired black officer creates a fact issue on whether Williamson's race was a motivating factor for not promoting him. So the failure-to-promote claim survives. But Williamson's other claims do not. He has not shown that making him return to his patrol job was retaliation. He was indeed then a patrol sergeant. And the City was purportedly short on officers and simply needed him working patrol. Similarly, conditioning his work return on performing his patrol duties was not disability discrimination. That's because patrol work is an essential function of Williamson's present patrol sergeant job.

Thus, the Court **DENIES in part** and **GRANTS in part** the City of Grenada's summary judgment motion. [65] The Court denies summary judgment on Williamson's failure-to-promote

race discrimination claim.[1] But the Court grants summary judgment on Williamson's retaliation, disability discrimination, and return-to-work race discrimination claims. So those claims are **DISMISSED**.

**Facts and Procedural History**[2]

In July 2010, Williamson started working for the Grenada Police Department. After beginning as a patrol officer, Williamson was promoted to corporal. Then, in 2014, the City promoted him to sergeant. All of his roles were in the Department's patrol division. And from 2010 to 2022, "all [Williamson] did was work patrol shifts."

**I. NIBRS Certification**

In early 2022, Police Chief George Douglas announced a new initiative. He wanted to bring the department into compliance with the National Incident-Based Reporting System (NIBRS). NIBRS requires all police reports include specific information. And it involves officers writing reports, supervisors reviewing them, and someone to coordinate and submit them to the State. A department becomes NIBRS compliant when it reaches a certain percentage of error-free reports. Without NIBRS certification, a municipality's ability to obtain federal funding diminishes significantly.

Following Chief Douglas's announcement, Williamson asked to help with the Department's NIBRS certification. He enthusiastically texted Chief Douglas about the opportunity

---

[1] With only one claim teed up for trial, the Court finds no reason to delay. Therefore, the City's Motion to Continue Pretrial Conference and Jury Trial [75] is **DENIED**.

[2] To determine whether summary judgment is appropriate, "a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). Thus, the Court views the evidence presented in the light most favorable to Williamson.

to correct reports and work in an administrative role. And Chief Douglas placed Williamson on NIBRS duty immediately.

According to Williamson, the NIBRS role—entirely new—was a job distinct from patrol. He insists getting "NIBRS back on track" was his "only job duty at that time." But Chief Douglas says the role was merely a duty assignment. And Williamson remained a patrol officer while working on NIBRS compliance. According to Williamson, "[w]hen it was needed," he would respond to calls or "fill in on a [patrol] shift." Still, Williamson maintains NIBRS compliance required his "full-time" attention.

## II. Williamson's Request for Promotion

In 2023, Patrol Commander Joey Merriman—a white man—retired. Merriman was one of the Department's two commanders. The other was Detective Commander Kenith Sanders—a black man. With Merriman gone, Williamson moved into his empty office and continued NIBRS work. Williamson also "began acquiring more duties" like issuing uniforms, repairing body cams, and inspecting records.

Because he had effectively taken over for Merriman, Williamson approached then-City Manager Charles Weathers—a black man—about a promotion. Weathers took Williamson's request to Chief Douglas. And Weathers recommended that both Williamson and another white officer, Steven Rosamund, be considered for promotion. Weathers believed this was appropriate because all other leadership was black.

While Rosamund declined promotion for salary reasons,[3] Chief Douglas refused to consider promoting Williamson to commander. Instead, he offered Williamson either lieutenant,

[3] Rosamund was an hourly employee as a sergeant. If he were promoted to captain, he would be salaried. Because Rosamund's overtime sergeant pay allowed him to frequently earn more than a captain, he declined promotion.

captain, or administrative captain. Williamson declined each promotion. He believed he performed his daily tasks at a higher level than a captain.[4] And he deserved a commander's salary.

So Williamson specifically asked to be "Administrative Commander"—a spot that reflected the work he was doing. That promotion would have moved Williamson into a commander position while still leaving Merriman's Patrol Commander position for Chief Douglas to fill. But Douglas refused to promote Williamson to commander.

### III. Fair's Promotion

While Chief Douglas denied Williamson his desired promotion, the Chief made two other promotions in July 2024. Douglas presented Reggie Woodall and Rolando Fair—both black men—to the City Council. And he sought the Council's approval for promoting them to captain positions. The City Council voted unanimously to promote both Woodall and Fair to captains.

When promoted, Woodall was an experienced Patrol Lieutenant. By all accounts, he was highly qualified for the captain promotion. But Fair was a new probationary patrolman with less than six months on the job. And when later deposed, he struggled to recall ever filling out an incident report or arresting anyone before his promotion. Even so, Fair leapfrogged up the command chain to a captain's position. Fair's promotion violated Department promotion policies requiring years on the job and service as a lieutenant before becoming captain. So several officers, including Williamson, filed grievances.

Williamson's July 15, 2024, grievance expressed concerns that as a mere probationary officer Fair was not qualified for a captain promotion. Williamson also mentioned the all-black

[4] The Department's rank structure in ascending order is patrolman, corporal, sergeant, lieutenant, captain, commander, and chief.

command staff. And he questioned the role Fair's race played in his speedy, unorthodox promotion.

In response to the obvious Department policy violation, formal grievances, and negative optics with Fair's promotion, city board member Lori Chavis brought the issue to the full board. And at an August 5 board meeting, Chavis moved to reconsider the promotions. The three white council members voted to reconsider. But the four black council members voted to uphold Fair's promotion.

Throughout the promotion process, Chief Douglas defended choosing Fair. Though Fair was new to the Department, he was not wholly inexperienced. Fair spent over twenty years as a Mississippi Highway Patrolman. And from 2019-2023, he served one term as Sheriff of Grenada County before losing the next election. Douglas maintained he wanted Fair's experience in part to assist with the Department's training academy. Douglas later testified he could also use Fair in other gofer-type roles—"I . . . may give him responsibility to take care of my vehicles. I may give him the responsibility to . . . run some type of errand or to do something as far as my equipment."

Because neither the City Council nor Chief Douglas reconsidered Fair's promotion, Williamson found no satisfaction from his grievance. So on August 8, 2024, he filed his first EEOC charge. He frames the denial of his own promotion and the speed and ease of Fair's promotion as race discrimination. The City of Grenada received notice of Williamson's EEOC charge on August 14.

**IV. Return to Patrol, NIBRS Certification, and Medical Leave**

After filing a grievance with the Department and an EEOC charge, Williamson continued performing administrative NIBRS compliance duties. But on March 11, 2025—after nearly three years working on NIBRS—Chief Douglas told Williamson his "expertise and knowledge is

required on patrol." But Williamson's "duties assisting with NIBRS compliance [were still] required on a daily basis." So Williamson began taking more patrol shifts to cover the Department's personnel shortage.

Williamson alleges the mixed work on NIBRS and patrol shifts stressed him. And pulling double duty exacerbated pre-existing mental conditions from his military service in Iraq. Even so, he continued handling both duties. And on October 27, 2025, the Mississippi Department of Public Safety recognized Grenada as NIBRS certified. After months of patrol and administrative work, Williamson sought and received medical leave on October 31.

## V. Requested Accommodations and Temporary Return

After several weeks on leave, Williamson tried to return to work. But he only wanted the administrative NIBRS role. Multiple chronic medical conditions supposedly kept him from working patrol. So on November 29, Williamson wrote human resources requesting return to the NIBRS work without patrol duties. He recommended medical accommodation by working an "exclusive administrative role." What he aimed to do is eliminate strenuous physical duties, field supervision, and field training work.

For a time, Williamson returned to work performing administrative duties. But the new city clerk—Angela Edwards—told him his NIBRS job was done. Now he was needed on patrol. Citing mental health problems, Williamson refused patrol duties. So he stopped working. The City let him remain on unpaid leave until he returns to patrol. And by all accounts, Williamson is still on unpaid leave with the Department.

## VI. Second EEOC Charge and Lawsuit

Williamson originally filed this lawsuit on July 3, 2025—back when he was working dual administrative and patrol roles. He brought race discrimination and retaliation claims. But since

filing his first complaint, Williamson has taken medical leave, attempted to return to administrative work, and been told he can only work patrol. So on January 20, 2026, Williamson filed his second EEOC charge. This charge alleged the City did not accommodate his disability with a purely administrative job. After receiving a right-to-sue notice, Williamson amended his complaint to add a disability discrimination claim.

Grenada moved for summary judgment on all of Williamson's claims.

**Summary Judgment Standard**

Summary judgment is proper when "'there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c) (1986)) (current version at FED. R. CIV. P. 56(a)). Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.*

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). The Court may grant summary judgment "if the record *conclusively* establishes that the necessary legal elements are (or are not) met." *Cory v. Stewart*, 103 F.4th 1067, 1079 (5th Cir. 2024). But "if there is evidence . . . that 'implies' a material factual dispute, summary judgment is improper." *Id.*

## Discussion

After review, Grenada is entitled to summary judgment on all but one of Williamson's claims—his failure-to-promote claim.

Williamson's amended complaint alleged Grenada violated Title VII, 42 U.S.C. § 1981, and the Americans with Disabilities Act. Though he pushes discrimination and retaliation claims across four separate counts, the Court discerns five basic claims. Williamson alleges (1) race discrimination under Title VII for not promoting him. This is the only claim that survives summary judgment. Williamson also alleges (2) retaliation under Title VII and § 1981 for his filing an EEOC charge and grievance, (3) discrimination under Title VII and § 1981 for denying his return to work, (4) retaliation under Title VII and § 1981 for his filing a lawsuit, and (5) discrimination under the ADA for not accommodating Williamson's work return with a purely administrative role. None of these claims survive summary judgment. So they are dismissed.

### I. *McDonnell Douglas* Framework

The legal framework governing Williamson's Title VII claims is the *McDonnell Douglas*[5] burden-shifting analysis. That's because Williamson does not support his Title VII claims with *direct* evidence of Grenada's discrimination or retaliation. Instead, he relies on circumstantial evidence. *Brenyah v. Columbia Hosp. Corp. of Bay Area*, 181 F.4th 609, 620 (5th Cir. 2026).

There are three steps to the *McDonnell Douglas* framework. Williamson "has the initial burden of establishing a prima facie case of discrimination [or retaliation]." *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021) (quoting *McDonnell Douglas*, 411 U.S. at 802); *Smith v. Bd. of Supervisors of S. Univ.*, 656 F. App'x 30, 32 (5th Cir. 2016) (per curiam). If he does establish a prima facie case, "the burden then shifts to [Grenada] 'to articulate some legitimate,

---

[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

nondiscriminatory reason' for its action." *Ross*, 993 F.3d at 321 (quoting *McDonnell Douglas*, 411 U.S. at 802). And if Grenada "can provide a reason, then the burden shifts back to [Williamson] to prove that the reason is pretextual." *Id.*

The Court acknowledges *McDonnell Douglas*'s heightened burden on plaintiffs at the summary judgment stage. And admittedly, "*McDonnell Douglas* is hard to square with Rule 56." *Holloway v. Procter & Gamble Mfg. Co.*, 185 F.4th 545, 552 (5th Cir. 2026) (Ho, J., concurring). But unquestionably it is "the framework 'courts typically apply' 'to determine whether the plaintiff has proffered sufficient evidence to survive summary judgment.'" *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 321 (2025) (Thomas, J., concurring) (quoting *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016)). So this Court must stick to the precedent applying *McDonnell Douglas* to Title VII claims at summary judgment.

## II. Title VII Discrimination Claims

### *A. Discrimination Claim Based on Failure to Promote*

Applying this framework, the Court first analyzes Williamson's Title VII failure-to-promote discrimination claim—a claim he bases on not getting a commander role.

#### 1. Prima Facie Case

Williamson can establish a prima facie case for failure-to-promote discrimination by demonstrating "(1) he was not promoted, (2) he was qualified for the position he sought, (3) he fell within a protected class at the time of the failure to promote, and (4) the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote [him] because of his race." *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346-47 (5th Cir. 2013).

Grenada does not challenge Williamson's membership in a protected class. Neither can it dispute that Williamson was not promoted. And Williamson has demonstrated he was qualified

for an Administrative Commander position. He spent three years performing almost exclusively administrative work to get the Department NIBRS certified—the exact work he would do as Administrative Commander. And while the City did not make anyone else Administrative Commander, Williamson has at least demonstrated that it failed to promote him due to his race.

It is undisputed, the Police Chief maintains an all-black command staff. Indeed, the city manager suggested the Chief promote a qualified white officer. Still, the Chief rejected that advice and disregarded Department procedures. And soon after, he promoted Fair—who was still serving as a probationary patrol officer—to captain. These circumstances give "rise to an inference of unlawful discrimination." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

The Court acknowledges that to establish his prima facie case, Williamson must ordinarily show he "applied for an available position." *Id.* But it is clear Grenada had no problem fashioning a position for Fair and not Williamson. True, Fair's general captain title existed. But his *role and duties*—or lack thereof—as captain did not.

Chief Douglas testified Fair may take care of his vehicles or run errands or do something with the Chief's "equipment." As one officer emphasized, Fair is a captain in title—but he does not supervise a shift or do the job of a patrol captain. And a reasonable jury could conclude Fair's role at the academy was little more than a perk to secure a paycheck. He hardly showed up. In fact, Fair simultaneously works as the Chief of Police of another city's police department. So as some officers saw it, "Captain" seemed to be a real title applied to Fair's made-up "gofer" role.

Contrast that with Williamson, who was highly regarded. One officer described Williamson as "10 out of 10 . . . excellent." The exact title "Administrative Commander" may not have existed. But clearly it was a role the Chief had Williamson perform for nearly three years while Williamson steered the Department to NIBRS certification. Looking at these facts, the Court

cannot say that Williamson was not "rejected under circumstances which give rise to an inference of unlawful discrimination." *Id.*

Thus, Williamson established a prima facie discrimination case on his failure-to-promote claim.

**2. Nondiscriminatory Reason**

Once a plaintiff makes a prima facie case, "the burden shifts 'to the defendant to proffer a legitimate, nondiscriminatory reason for not promoting the plaintiff.'" *Stelly v. Dep't of Pub. Safety & Corrs., La. State*, 149 F.4th 516, 522 (5th Cir. 2025) (quoting *Autry*, 704 F.3d at 347). This is a burden "of production, not persuasion." *Russell v. City of Tupelo, Miss.*, 544 F. Supp. 3d 741, 754 (N.D. Miss. 2021) (internal quotation marks omitted) (quoting *Mengistu v. Miss. Valley State Univ.*, No. 4:16-cv-65-SA-JMV, at *2 (N.D. Miss. Sept. 5, 2017)). And it carries "no credibility assessment." *Id.*

Grenada's nondiscriminatory reason for not making Williamson Administrative Commander is the position did not exist at the Department. This is certainly a nondiscriminatory reason for not promoting Williamson to that role. *See Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 324 (5th Cir. 2002) ("The nonexistence of an available position is a legitimate reason not to promote.").

So the burden shifts back to Williamson.

**3. Pretext / Motivating Factor**

After Grenada posits a nondiscriminatory reason, Williamson must show "either that [Grenada's] articulated reason is merely a pretext for race discrimination (the pretext alternative), or that the defendant's reason, while true, is only one of the reasons for its decision, and another 'motivating factor' is the plaintiff's protected characteristic (the mixed-motives alternative)."

*Autry*, 704 F.3d at 347 (quoting *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011)). "Of course, '[i]n the context of a summary judgment proceeding, the question is not whether the plaintiff *proves* pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext." *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 813 (5th Cir. 1991) (alteration in original) (quoting *Thornbrough v. Columbus & Greenville R. Co.*, 760 F.2d 633, 646 (5th Cir. 1985)).

Williamson raised a fact issue about race being a motivating factor in the Department's promotions. And he points to Fair's promotion as an objectively suspicious prime example. Indeed, Douglas promoted Fair to Captain—while he was serving as a probationary patrolman—within his first six months on the job. This promotion violated Department policy requiring years of service and a lieutenant's rank before becoming captain. Douglas mentions Fair's helping run the police academy figured in his decision. But beyond instructing on the Intoxilyzer 8000, Fair had no teaching experience. And once at the academy, Fair was frequently a no show.[6]

Perhaps Fair's absences stemmed from his concurrent service as police chief in Coffeeville. Before his Grenada promotion, Fair claimed 96 hours per week on his pay stub between the two jobs. And when deposed, Chief Douglas admitted that before promoting Fair, he never even asked him about time commitments to the Coffeeville Chief job. Further, there are questions about Douglas helping Fair cheat on the Grenada captain's exam.

But it doesn't stop there. Not only did Chief Douglas rapidly elevate Fair, he also allegedly expressed that race *would* factor in Department promotions. Officer Sean Wilbourn (white)

---

[6] The Mississippi Department of Public Safety (DPS) warned Chief Douglas the academy had several deficiencies including unqualified instructors and excessive absenteeism from instructors and/or students. On July 17, 2026—three months after issuing its warning—the DPS shut down Grenada's training academy.

testified to overhearing Douglas tell a black officer to "stand by. I'm fixing to do some promotions. It's our time." From these red flags, a reasonable juror could certainly conclude that race played into the Department's promotion scheme. Thus, Williamson presented sufficient evidence to show race was a motivating factor in Grenada denying his requested promotion.

Because Williamson has created a fact issue on his failure-to-promote claim, summary judgment is denied on it.

### *B. Discrimination Claim Based on Refusing Williamson's Return to Work in Administration*

But Grenada is entitled to summary judgment on Williamson's second Title VII discrimination claim. This claim alleges Grenada racially discriminated against Williamson by only allowing him to return from medical leave if he worked patrol. Williamson had hoped to return from leave and continue his administrative work. But Grenada insisted Williamson—a patrol sergeant—work patrol.

#### 1. Prima Facie Case

Williamson's return-to-work discrimination claim is a general discrimination claim under Title VII. And general race discrimination claims require a different prima facie case than failure-to-promote race discrimination claims. To establish a circumstantial-evidence-based prima facie case of general Title VII discrimination, a plaintiff must show "(1) [he] is a member of a protected class; (2) [he] was qualified for the position; (3) [he] suffered an adverse employment action; and (4) others similarly situated but outside of [his] protected class were treated more favorably." *Brenyah*, 181 F.4th at 620 (citing *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997-98 (5th Cir. 2022)).

The City challenges all but Williamson's membership in a protected class. But the Court need only address Williamson's failure to show he suffered an adverse action.

"Adverse employment actions include adverse decisions in hiring, firing, compensation, or in the terms, conditions, or privileges of employment." *Id.* (internal quotation marks omitted) (quoting *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 502 (5th Cir. 2023)). Williamson "must show some harm respecting an identifiable term or condition of employment." *Id.* (internal quotation marks omitted) (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 354-55 (2024)).

Williamson ties this discrimination claim to Grenada requiring him—a patrol sergeant—to work patrol after his medical leave. Grenada did not fire him, reduce his pay, or demote him from sergeant. Nor did it change the terms, conditions, or privileges of Williamson's employment *as a patrol sergeant*. It simply required that if he returned from medical leave, he perform the same patrol duties he had worked over a decade before he ran NIBRS. And Williamson's NIBRS work never changed his core job as a patrol sergeant. So Williamson has not demonstrated that requiring him to work patrol was a "harm respecting an identifiable term or condition of employment" as a patrol sergeant. *Id.*

On these facts, the Court cannot say Williamson has shown an adverse action by requiring a patrol sergeant to work patrol. Thus, he has not made a prima facie case of discrimination based on denying him administrative work after his medical leave.

Therefore, Grenada is entitled to summary judgment on Williamson's return-to-work race discrimination claim.

## III. Title VII Retaliation Claims

Williamson next brings two Title VII retaliation claims. These claims are also analyzed under the *McDonnell Douglas* framework. In the first claim, he alleges that making him return to patrol while working NIBRS was retaliation for his grievance and EEOC charge. The second claim concerns Williamson's attempt to return to an administrative role after taking medical leave.

He alleges the City's requirement he work patrol instead of administration was retaliation for his grievances, EEOC charges, and filing this lawsuit.

In the *McDonnell Douglas* analysis, Williamson can establish a prima facie case of retaliation by showing "1) [he] engaged in a protected activity; 2) [he] suffered an adverse employment action; and 3) there is a causal connection between the two." *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 835 (5th Cir. 2022) (citing *Saketkoo*, 31 F.4th at 998-1000). If Williamson can establish a prima facie case, then Grenada must put forth a "legitimate, nondiscriminatory reason" for its employment action. *Id.* And the final *McDonnell Douglas* step asks "whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision." *Id.* (internal quotation marks omitted) (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996)).[7]

### *A. Retaliation Claim Based on Adding Patrol Duties*

#### 1. Prima Facie Case & Nondiscriminatory Reason

Grenada challenges Williamson's ability to even make a prima facie case of retaliation for sending him back on patrol while working NIBRS. It points to Williamson's lack of specificity about what protected activity he engaged in. And it notes his difficulty in identifying an adverse action. Grenada also raises concerns about the causation element. It cites the lengthy time between Williamson's EEOC charge and Chief Douglas returning him to his patrol duties. But the Court

---

[7] In a retaliation claim, a plaintiff has two causation hurdles at the *McDonnell Douglas* stage. The first comes at the prima facie step which merely requires a "causal connection." This may be established with "'close timing' between the protected activity and adverse action." *Id.* (quoting *Swanson v. GSA*, 110 F.3d 1180, 1188 n.3 (5th Cir. 1997)). At the third *McDonnell Douglas* step—pretext—courts apply a more demanding "but-for standard." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020).

need not address Williamson's prima facie case or Grenada's non-retaliatory reasons for putting him back on patrol. That's because this claim fails on the third *McDonnell Douglas* step—pretext.

**2. Pretext**

Unlike Title VII discrimination claims, Title VII retaliation claims require Williamson show his protected activity—filing a grievance and EEOC charge—was the *"but for" cause* of his termination.

"[A] plaintiff making a retaliation claim under [Title VII] must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). The Fifth Circuit has held this heightened "but for" standard applies at the pretext step of the *McDonnell Douglas* analysis, not the prima facie case step. *Owens*, 33 F.4th at 835; *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020). And Williamson cannot establish that, "but for" his complaining about Fair's promotion, the Chief would not have made him work patrol shifts.

Grenada explains it had Williamson return to patrol because it was short on patrol officers. Williamson argues a jury might disagree and find this reason pretextual. He points to the City lacking adequate patrol officers for at least a year before sending him back out. Williamson also argues that if patrol officers were critical, the City would not have promoted Fair from probationary patrolman status.

These reasons may have justified the City keeping Williamson on patrol while also working NIBRS or not promoting Fair. But they do not establish the necessary "but for" causation for retaliation. That's because Williamson presented no "substantial evidence that 'but for' exercising protected rights," the Chief would have allowed him to *only* work on NIBRS and not patrol. *Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016) (citing *Nassar*, 570 U.S. at 360).

Because Williamson cannot show that "but for" his EEOC charge and grievances he would not have had to work patrol while doing NIBRS, his added-patrol-duties retaliation claim fails.

### *B. Retaliation Claim Based on Refusing Williamson's Return to Administrative Work*

Williamson bases his second retaliation claim on Grenada making him work patrol on his return to work. After taking medical leave, Williamson wanted to return in a purely administrative capacity. But Grenada would only allow him to work if he did his regular patrol job. Williamson claims this was retaliation for his grievances, second EEOC charge, and this lawsuit.

Williamson has already failed to show Grenada's requiring he return to patrol after his medical leave was an adverse action. So the analysis could end at the prima facie case step. But as with Williamson's previous retaliation claim, the Court focuses on the pretext stage of the *McDonnell Douglas* analysis. And Williamson has not presented substantial evidence that "but for" complaining about discrimination, the Chief would have allowed him to return to only administrative work.

When Williamson returned to work in December 2025, he only wanted to perform administrative NIBRS compliance work. But by then, the City had already become NIBRS certified. And the City supposedly needed Williamson filling in on patrol, not reviewing other officer's police reports. Again, Grenada's need for patrol officers is nondiscriminatory. And Williamson has not shown that "but for" his grievances and EEOC complaints he would have been allowed to *only* work on NIBRS paperwork. Without this "but-for" link, his second retaliation claim fails.

## IV. Williamson's § 1981 claims

In addition to bringing some claims under Title VII, Williamson also brings them under § 1981. But his § 1981 claims are categorically barred.

Williamson's § 1981 claims—whether based on discrimination or retaliation—must be dismissed. He brought his retaliation claims and return-to-work discrimination claim under both Title VII and § 1981. But because Grenada is a government actor, Williamson had to bring his § 1981 claims under § 1983. Because Williamson did not do so, his § 1981 claims are dismissed.

"[T]he express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989). "Thus, plaintiffs *must* assert causes of action against local government actors under § 1983 in order to obtain a monetary remedy for violations of civil rights protected by § 1981." *Escamilla v. Elliot*, 816 F. App'x 919, 922 (5th Cir. 2020) (per curiam).

Williamson's complaint lacks any reference to § 1983. While that is not inherently fatal to his § 1981 claims, he must still bring those claims under § 1983. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (reversing summary judgment where plaintiffs failed to expressly invoke § 1983, but on remand allowing plaintiffs "opportunity to add to their complaint a citation to § 1983"). Even where amendment is allowed, the complaint must still invoke § 1983.

But here, Williamson need not be allowed to pen a new citation to § 1983. That's because the analysis of his claims under Title VII mirrors a § 1981 analysis. And Williamson's claims already failed under that regime. "The summary judgment analysis is the same for claims of race discrimination under Title VII, § 1981, and § 1983." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004). "The legal framework governing [Williamson's] Title VII [and] Section 1981 . . . retaliation claims is coextensive." *Brenya*, 181 F.4th at 623; *see also Foley v. Univ. of*

*Houston Sys.*, 355 F.3d 333, 340 n. 8 (5th Cir. 2003) ("The district court properly applied the same summary judgment criteria to the retaliation claims under § 1981 and Title VII because they are parallel causes of action."). So Williamson's § 1981 claims fail for both reasons.

**V. ADA Discrimination Claim**

Finally, Williamson asserts Grenada discriminated against him under the ADA. He claims his disabilities precluded him from working patrol when he sought to return to work. And by Grenada not allowing him to return in a purely administrative role, it failed to accommodate those disabilities.

But to win an ADA failure-to-accommodate claim, Williamson must prove "(1) [he] is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. La., Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)(A)).

An individual does not qualify under the ADA if "no available reasonable accommodations [ ] would . . . enable [him] to perform the essential functions of his job." *Hayes v. GStek, Inc.*, 175 F.4th 603, 607 (5th Cir. 2026) (internal quotation marks omitted (quoting *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 419 (5th Cir. 2013)). To determine an "essential function," Courts consider the employer's judgment, not an "employee's personal judgment." *Id.* at 607-08 (citing 42 U.S.C. § 12111(8); *Credeur v. La. Through Off. of Att'y Gen.*, 860 F.3d 785, 794 (5th Cir. 2017)).

Williamson considers his NIBRS administrative work essential to his job. According to him, he moved from patrol to administration. And patrol duties were no longer his essential functions. But Grenada points out Williamson always remained a patrol sergeant. And patrol

duties are an essential function of patrol sergeant. Indeed, Williamson's years on patrol, his occasional patrol duties while working NIBRS, and the shortage Grenada faces with him off the road support this. *See id.* at 608.

Finally, Williamson will only accept a return to work if he no longer has to perform patrol duties. But the ADA "'does not require an employer to relieve an employee of any essential functions of his or her job.'" *Id.* (quoting *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 698 (5th Cir. 2014)). The bottom line is Williamson cannot maintain a failure-to-accommodate ADA claim by refusing a return to patrol work—an essential function of his patrol sergeant job.

Thus, Grenada is entitled to summary judgment on Williamson's ADA claim.

**Conclusion**

For these reasons, Grenada's Summary Judgment Motion [65] is **DENIED in part** as to Williamson's Title VII failure-to-promote claim. And it is **GRANTED in part**. Williamson's § 1981 and ADA claims are **DISMISSED with prejudice**. So is his Title VII discrimination claim based on Grenada not allowing him to return to work in a purely administrative role.

Grenada's Motion to Continue Pretrial Conference and Jury Trial [75] is **DENIED**.

**SO ORDERED**, this the 2nd day of November, 2026.

/s/ James D. Maxwell, II
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI